We will begin our agenda session with number 23-1648, Shamrock Building Materials v. United States. Mr. Gill. Good morning, Your Honors. I am Patrick Gill of Counsel to the firm Sandler, Travis, and Rosenberg. I'm joined this morning by my co-counsel, Don Cameron, from Morris, We respectfully submit that the CIT committed reversible error in interpreting heading 8547. The issue in this appeal is whether the subject conduit tubing falls within the plain meaning of the unambiguous heading 8547, namely, whether the subject conduit is, quote, lined with insulating material. Lined with insulating material is an unambiguous term expressed in plain, clear English language. Let me push back, at least, on the plainness of it. It seems to me one question that would have to be answered is whether, if there is any material that ever constitutes an insulator in the lining, is that enough? And I think the answer is clearly no, because if you lined insulating material with conducting material, that would not be enough. So one, I don't, ambiguity, anyway, one issue to resolve is whether the lining as a whole has to constitute insulating material. And then there's a question, as I think you recognize in your brief, insulating against what? Against friction? Against heat? Against electricity? Almost certainly electricity. You don't even make an argument about there being a heat thing. There's nothing plain about this. Well, I think to answer that question is we have to look at what the material, lining resin, melamine, and silicone, and those materials. And perhaps other stuff, although I don't see an issue being made of the other stuff. No, and under general interpretive rule 1B, as the statute reads, any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials and substances. So, and in point of fact. But do I understand that the record is undisputed that there is some non-zero measurable resistance provided by the material, but, and I don't think there's any dispute about that, but the head court concluded that it was also undisputed that in some real world commercial sense the degree of the resistance would not be viewed as making the lining as a whole insulating material. Well, I think that's where the, you're getting close to the heart of the error in the decision below. There's no dispute that the lining, the interior coating, varnishes on the inside of the tubes. And it's there. And that material itself is undisputably recognized as insulating material in the wealth of authorities that we cited in our brief. And even, as you know, the government expert witness conceded that the epoxy coating resists electrical current. And most importantly. But not enough to provide any real protection. I'm sorry, Your Honor. Not enough to provide any real protection. I mean, you both agreed also that it wasn't sufficient to insulate you from electric shock. Well, you know, its purpose here is to make sure. Let me ask you this, hypothetically. It seems like your view is if anything on the inside of this conduit falls within a class of materials that constitutes insulating material, that it goes in this category. Is that right? That's right, Your Honor. So if you have the smallest, like, barely, barely, you know, like micron, like super, I don't even know what goes below micron. It just, you know, it performs no function whatsoever, but it gets put in there. Is that enough to put it in this category? Well, it does perform a function. No, I'm asking you a hypothetical. In my hypothetical, we have a conduit that has some kind of material that is put on the inside of the conduit, but it performs no function whatsoever. I understand that might be a commercial impracticality, but let's just assume somebody's trying to do it to evade this category. Would that, nonetheless, because it technically is an insulating material, even if it doesn't perform any real functions, be enough to come into this category? Yes, I think it would, because very simply, if the material that's in there is an insulating material, and it is, it's 10-2 ohms meter, ohms meter, and that is recognized even in their expert witnesses as within a range of insulation. So we've got... So would there ever be a de minimis amount of the cooling material provided, such that you would agree that it would not fit in this category? Well, if, I don't know what would be de minimis. If the entire lining of the inner tube is this material, this insulating material, that is all the statute requires. We don't have to read beyond the plain words of the statute. You mentioned something just a minute ago about a particular figure or result, 10 to the minus something, as recognized to be within the range of, can you point to me what that is? Yeah. Can you point to me? I'm sorry. When I say point to, I want you to hold up the joint appendix and give me a page number. I need to look at it. I'm not, I'm not making myself clear. I don't care what words are coming out of your mouth. I need to look at a piece of paper that I can read the words that you are referring to. Can I come back to you if I understand that? This is, this is extremely central, right? If you had testing data that put the, right, the measure of resistance is not a binary, you know, one or zero. It's on a range. You're saying it's within a range that people would consider it to be insulating. Yes. That's right at the heart of the case, so I need to look at the document. In Gotthro, Gotthro said, in the report from Gotthro, he talks, Dr. Gotthro, and that is in the appendix, let's see. The study appendix page 168, is that where you're going to take this, Counselor? I've got it now. Okay. Page 192. It has the range for insulators, semiconductors, and conductors. If you want to take a second to find the page you're on. I have it. You have it. So if you look at the bottom of the page there, he talks about the range for insulators, and it's 1012 to 1020, and it's a fact in this case that the lining, in this case, falls within that range. But where is the figure about the test showing what the level of ohm meters resistance was on the test that your expert did? Well, this isn't a test, right? This is an entire section. It's not in just one page. Is this, yeah, but is what you're reading as a test, or is it where experts said, here are the three polymers, their characteristics put together give you this range? No, the role witness, I think, said it was 10.2. He found that as, hey, there's no dispute that that's what it is. It's 10.2. And that is in that range. You mean 10 point? No, I mean 1012. So it's in that range. And this specific conduit, is this a test? Is it a test? Did they take a conduit, your client's conduit, and run a test to see? Oh, yes. There were two people who did tests on material. One was Dr. Jackson, and he tested the material to find what the material was, what it was in, and what its ranges were. And he reported that to Dr. Gottfroh, who then opined that the material was indeed insulating. So speaker 17, just to follow up on Judge Hughes' question, representative of a test made of this conduit in particular. So figure 17 is on this page you took us to. Figure 17? Is that representative of a test here? I think that that would follow up on Judge Hughes' question. I'm sorry, Your Honor, I'm having trouble hearing and understanding the question. Appendix page 192 that you took us to. 192. I see a figure 17 on that page. Do you see it? It's like in the middle of the page. Figure 17? Figure 17, that's this? Yeah. Is that representative of a test is the question? Yes. How? It says volume resistivity of various polymers from 12, and you look back at 12 and it's talking about the chemical structures of various polymers. It looks like there are other things that might be tests, like figure 13 and figure 15. This is talking about the composition of these polymers and their general ranges, at least the way I read it, but if I'm wrong, tell me why I'm wrong. Well, I think the inquiry that has to be made here, and we have to look at what the court decided, the court found without question that, and it's uncontested, that the coating has a measurable electrically insulating property. That's on Appendix 12. That's different.  Well, anything, almost anything, unless it's a superconductor, right, can have some kind of resistance, but that doesn't mean it's enough to be insulating. Well, that gets us then to what the court did here, and I think if I can get to that, I can explain why the inquiry that has to be made is, one, what is the material, and is it insulating material? And if it cleans that, if it covers it. Let me ask you one other question. What is your best support here for why the coating has any commercially relevant electrically insulating effect? What's your best support? Point to an Appendix page, preferably. Well, we've got an uncontested fact that it does do, that it's electrically insulating, and it has that electrically insulating property. And the other thing I think you have to look at, at the provision as a whole, the authorities that we relied upon in Appendix 352 to 426 corroborate the expert opinion testimony of Shamrock's witness that these materials are electrically insulating and physically insulating as well. The term lined with insulating material, that's what the term is, not lined with electrically insulating material. So we've gone off the rails if we get totally focused on the degree of electrical insulation that's supplied by this material. And what makes it even more difficult is that the court moved on to say that it created a statutory test as to what constitutes insulated electrical conduit, stating that the lining must be capable of providing some unspecified but significant degree of electrical insulation, such as that it would, quote, significantly impede the flow of electrical current in the type of wiring circuits that would be found in or around residential or commercial buildings. That is a manufactured requirement. If that test draws no support from any language in the statute, from anything in the explanatory notes — Mr. Gill, I think we've gotten your argument. We've used all your rebuttal time. I will restore the rebuttal time, but it's time for us to hear from the government. Okay. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, Nico Gurian for the government. I'd like to pick up on just a couple of points that Appellant raised in the argument. Appellant just said the terms of the heading is lined with insulating material. It doesn't say lined with electrically insulating material. But why don't you pass that by and focus on what I think you could tell we were focused on. The question is, given that there is some undisputed measurable resistance, therefore something that the word insulating might apply to, might apply to, the trade court said, but it has to be viewed in a commercially relevant way as insulating. Why isn't the evidence here on their side of that question, putting aside all of their broader submissions? Well, Your Honor, it's undisputed that the testing done by witnesses for both parties found that the lining is not an insulator. Okay, now are you switching terms? Not an insulator, which might be a different thing from insulating material. You're right. Excuse me, Your Honor. It's not an insulating material in shamrocks tubing. It does not insulate the conduit tubing. Where is that? Here's what I'm remembering, and I'm going to look back at it. So there's a sentence or something to that effect in the trade court opinion that says the parties agree. It cites to a page we don't have, and that's, I think, in a confidential portion of the transcript of the oral argument. So we have, I at least, have not found a way to look at it and understand exactly what that means. It's a very dicey premise to proceed on without knowing what it means if we are trying to figure out what might be a small but significant linguistic distinction. Absolutely, Your Honor. So if you look at JA2368 from the oral argument transcript, this is where the trade court judge walks through a number of undisputed facts. And one of those facts is that neither Dr. Maliopoulos, the government's witness, nor Dr. Jackson found that the resistance level of the lining in the tubing rose to the level of an insulator. And this was in Dr. Jackson's report at JA1656. Let me just tell you what I'm concerned about, and you can tell me if I'm off base. Every time there's a switch from the phrase insulating material to an insulator, my antennas start to twitch that there's something possibly fishy going on here. And I, at least I remember, I think maybe their expert said, well, I don't know whether you'd call it an insulator, but I definitely think it's an insulating material. Am I wrong to be focusing on that linguistic point? I understand the point you're making, Your Honor, but I don't think it makes a key difference here. You're right that the phrase we should be using is an insulating material because there's electrical resistance, which is a measure in ohms of how much of the current is being blocked. And then there's electrical receptivity. That's an innate characteristic of a particular material as to how much it blocks the current. And so the testing that was done here was looking at electrical resistance. We're going to put voltage against the tube without the lining and with the lining, and we're going to see how much of the current is blocked. That's what Dr. Meliopoulos did. He found that the resistance was 12 times the amount that would be needed to provide electrical insulation, and that's what Dr. Jackson did. And he found it was 1.2 ohms, slightly higher. But importantly, Dr. Jackson, in his report and, again, in his deposition at JA664, said, yes, while the lining is slightly insulating as compared to no lining, it doesn't rise to the level of insulating the conduit tubing. And when using that language, was he talking about some commercially relevant sense? Did he tie that view to a marketplace perspective? I think Dr. Jackson, the shamrocks witness, was speaking in his capacity as an expert, but it does apply into the commercial context that this conduit tubing is being used. If we look at the EN, we know this electrical conduit tubing is being used in permanent electrical installations like house wiring, where we have wires coming through the tubing with 110, 120 volts of current. And to Judge Cunningham, to your question, the reason Appellant has difficulty finding places in the record of how this is in a commercial context should be considered electrically insulating is because there aren't any. If you look at their product brochure, which is the one piece of material that they advertise this tubing to electrical contractors, that's at 1589, they don't call it insulated electrical conduit tubing. There's no mention of its electrical insulating properties. The only thing they mention about the lining is that it provides protection for when you slide wires through. Even more, one of the benefits... Just to be clear, I thought there was one document that, was it from the actual manufacturer that does refer to the electrical insulating material? It's not a marketing document. It was, what, a letter or something or an e-mail responsive to a request for information or something like that? That's right, Your Honor. So the lining that goes in these tubes is not made by Shamrock. It's 1592. Exactly. So there are two letters from this third-party Pinterest. The first one says, We can't tell you exactly the makeup of this lining. Sorry. We can't tell you the makeup of the lining, but we can tell you it has epoxy, it has melamine, and it has silicone. Then at Shamrock's request, there's a follow-on letter where they say, It has epoxy, silicone, and melamine, and it has electrically insulating properties. But the analytical leap that that letter makes is actually the same one that Dr. Gautreaux, a plaintiff's expert, makes, which is basically saying, Epoxy, melamine, and silicone are these polymers that do have electrically insulating properties. And so they're basically saying, Well, because they have these properties and they're used in this lining, the lining is electrically insulating. But that's a leap because it's not analyzing what the actual lining is doing. I guess your argument depends on us reading 8547 to require, when it says insulating material, for the insulating material to have some kind of insulating function, rather than just be any kind of insulating material. That's right, Your Honor. Why is that correct? Well, for a number of reasons, I think, Your Honor. First, again, it's important to look at how this electrical conduit tubing is being used. And as I mentioned, the EN is clear that it's used in permanent electrical. EN being explanatory. Explanatory, no. Permanent electrical installations like house wiring. So these are electrical contractors and distributors who are buying this tubing to use when they're wiring up new houses. We also know it from the context of where we find this heading. It's in Chapter 85 and Section 16, which covers, quote, electrical equipment. The note to Chapter 85 makes clear that it covers articles and materials of electrical equipment and apparatus due to their conducting or insulating properties. So we know we're talking in the context of electrical equipment, and that language in the note is already contrasting conducting, the flow of electricity, versus insulating. So the terms of the heading itself as well as the context of the notes and the use of the tubing make clear that the trial court was correct, that line with insulating material requires electrical insulation. Is it your position that that term, line with insulating material, in the heading is ambiguous? Your Honor, it's ambiguous in the sense that they're not empty words. It's not enough to say we have some insulating stuff, ergo, it's insulating. To have any meaning, it actually has to provide insulation to the particular product that we're looking at. And we know here that this lining, which is at thickest 60 microns or 6 100ths of a millimeter thick, simply does not do that. So how do we know that? I mean, I know we know the specific facts, but if we accept your argument that this line with insulating material has to have insulating function and is just not on there for whatever other reason, how do we know where's the line for where's the insulating function and where's not? Your Honor, I don't think there's going to be a specific numerical line. I think it goes back to how a particular product is used in commerce. Again, electrical contractors and distributors who are using this product know when something is electrically insulating. There's actually really no dispute if you look at Appellant's brief at 25, what the definition of insulating means in the electrical context, preventing the passage, impeding the passage of electrons. Preventing and impeding are two different things. I thought it was undisputed that there was measurable resistance. So there's going to be some, I guess to use the language of 1592, will create a film with electrical insulating properties, provide a certain barrier against the transfer of electrons to the applied surface. So it's not zero. That's great, Your Honor. It's kind of a, it's an important aspect of Shamrock's argument that once you get beyond its positive, you're in a realm of uncertainty. That would be strange. Well, Your Honor, you're correct. It is undisputed that there is a slight level of electrical resistance, but it doesn't follow that. That's what I was trying to ask you. Where does it go from slight level of resistance because of the composition of these materials, which everybody agrees has some level of insulating properties, but it's not sufficient to fall within the function of insulating materials under this. Are we looking at what you're saying is the commercial use of these and that there's no dispute these are not bought for electric insulating conduits and things like that? That's right, Your Honor. It's crucial to answer that question to look at the commercial use. These conduits are not purchased and then used for their electrically insulating properties. And just remind me, what is the evidence for that from the commercial marketplace? It is, is it, one piece of evidence is that Shamrock's or their manufacturers' marketing materials don't count it. Is there more than that or is that all? I'm not suggesting that might not be enough. Right. I think another key piece of evidence in the record, Your Honor, is it's undisputed that Shamrock is unaware of any customers who purchase the tubing because of its electrically insulating properties. So not only are they not advertising it as electrically insulating, but these electrical contractors and distributors are not buying it for its electrically insulating purposes. And far from it, one of the benefits they advertise is this idea of system grounding. That's a safety mechanism where if there's an electrical fault within the tube, the conduit actually can conduct the electricity to ground. So it's not just that they're not advertising it as electrically insulating, they're advertising one of the benefits that it can conduct electricity. And is there, well, one of the, two of the things that I don't remember seeing anything in the record about would be two different kinds of comparisons. So one would be this conduit against some commercial product that undisputedly is a insulating material and comparing them to show that this is, you know, either close to it or much less than that. And the other is comparing this material to whatever might be in the market under that subheading in the 73 series that allows there to be a lining, but only a non-electrically insulating material. And neither of those comparisons, am I right, is in this record? That's correct, Your Honor. The comparison is simply the tubing with the lining versus without the lining. Unless there are any other questions. Can you just address the point that we were talking about with Mr. Gill about the figure on page 192, which seems to be a textbook or a research paper that says these kinds of materials, and now I'm using the term material not in the sense of a product, but just a compound or composition or something. And then comparing that to some result from, is it Dr. Jackson or something, that puts this material in the range of 10 to the 12th. Yes, Your Honor. So looking at figure 17 on 192, you're correct. This is just a chart looking at different polymers. The top one, PTFE, that's Teflon. And going down, you see PVC. These polymers, in general, what their resistivity is, what the inherent level of resistance they have. All Dr. Gautreaux did was the other images you see, the spectra images, are confirming the presence of epoxy, melamine, and silicone. So what Dr. Gautreaux did was confirm the presence of epoxy, silicone, and melamine. Say, in general, epoxy, silicone, and melamine have this level of resistivity. And then what he, in a deposition himself, just called a deduction, said, and therefore, this lining is electrically insulated. We'll start with the questions. Thank you. Thank you, Your Honors. Mr. Garreaux, five minutes for rebuttal. A couple of points that I think need to be made. The first thing is, in answer to Judge Taranto's question as to where you're going to find it in the record, if you go to 0835, you've got the tests that were performed by Dr. Jackson, and clearly you've got the voltages set forth there. And to Judge Cunningham's question, the numerous electrical insulation does not necessarily mean that it's not insulating material. And I think what we have to also look at here and not forget about is that there were 20 years of rulings by customs on almost the identical merchandise, but basically all with epoxy residences and so on. And every single one of these rulings, they held that it's properly classified at 8547. Can I just ask? So it's been a little while since I've looked at those rulings. So here's what I'm remembering, and then you'll just correct me. My recollection is that at least some of the rulings, maybe all of them, say to the extent that these are made of insulating materials, then of course they go into the 85 classification, but that they don't give us any real information about whether a particular product has a level of resistivity that would be considered and was at the time considered in the commercial setting insulating material. So they don't really help us on this particular matter. Well, because I think they probably didn't make that inquiry because it's not a legitimate inquiry under the statute. And what I can't grasp is why the government has nothing to say about those rulings and as to why they should not be followed and why they should not be given Skidmore deference. There should have at least been a Skidmore analysis to determine whether the rulings had the power to persuade, and that was not done. It was ignored because the court frankly said at one point... Well, the rulings, if I remember them right, are, to use a word, rather conclusory. They don't provide much reasoning. They say if you have this insulating material lining it, then of course it goes under 85, but they don't provide much help in saying here's how you can tell whether a particular product has that characteristic. Well, this kind of gets to Judge Hughes' question as well. What is significant? What's the magic number here that's going to get us in if we're going to employ that test? It would be an absolute nightmare for importers and CBP now to determine, well, what is significant? We don't know. The court doesn't tell us what it is, but he knows it when he sees it, I guess, but we don't know, so what do we do? Every single shipment now would have to go to labs to be tested to determine whether it's significant. Aren't the electrical conduits sold and marketed as having insulating materials in them? I don't know how they market it, and I don't know, to be frank, what marketing has to do with this. We do know that they're not answering that question because this would go to how we decide it. If there are specific products on the market that are sold to contractors and the like that these are conduits for electrical wiring that have insulating material and perform an insulating function, those are the ones we know are going to be in this code, and if they're sold as not for that, and, in fact, the government suggested these are sold with the suggestion that they have conductivity, which I think is opposite of insulating, then we know they don't belong. I think that's absolutely inaccurate. The way an electrical contractor knows what he's dealing with, there's two types, obviously, that we're involved in. Well, that's what I'm asking. Is there a group, and we didn't get them on this record, but if you deal with this kind of stuff, maybe you know, is there a group of electrical conduits with insulating material that are marketed and sold to contractors saying these are electrical conduits with insulating materials that will provide sufficient impedance? I don't know whether they market it that way. The contractors who go buy this stuff at Home Depot or anywhere else where they might get it or directly from a manufacturer such as Shamrock, they're going to buy one of two types. They're going to buy the widget type, which does not have any insulating material on it. It's lined only with zinc to prevent corrosion, and they're not going to spend the money to get a different type, which has the lining on it, which costs money to do to manufacture it that way. So they know what they're buying, and they know how to use it, and they know only lined and lined. They wouldn't be decent electricians if they didn't know that. They don't need a marketer to tell them that. You have used all of your rebuttal time, so we're going to declare the argument at an end. Thanks to both counsel. The case is submitted.